**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CIVIL No. ___3:25cv1067___ |
| v. | |
| Commonwealth of Virginia, | COMPLAINT |
| Defendant. | |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

Federal law prohibits States from providing aliens who are not lawfully present in the United States with any postsecondary education benefit that is denied to U.S. citizens. *See* 8 U.S.C. § 1623(a). There are no exceptions. Virginia violates it nonetheless. This court should put an end to this and permanently enjoin the enforcement of provisions of the Virginia Education Code that directly conflict with federal immigration law.

Virginia Code §§ 23.1-502 and 23.505.1 explicitly classify illegal aliens as Virginia residents based on certain conditions. That classification makes illegal aliens eligible for reduced in-state tuition and state-administered financial assistance for public state colleges and universities while U.S. citizens from other states are ineligible for the reduced tuition and must pay higher out-of-state tuition rates. This is not only wrong but illegal. The challenged act's discriminatory treatment in favor of illegal aliens over U.S.

1

citizens is squarely prohibited and preempted by federal law, which provides that "an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). The challenged act, as applied to illegal aliens, is thus unconstitutional under the Supremacy Clause of the United States Constitution.  This Court should declare Virginia's law, as applied to illegal aliens, preempted and permanently enjoin its enforcement.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1345.

2.      Venue lies in this district under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to this action occurred in this district.

3.      The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

4.       Plaintiff, the United States of America, regulates immigration, foreign and interstate commerce under its constitutional and statutory authorities. Plaintiff enforces federal immigration laws through its Executive agencies, including the Department of Justice and Department of Homeland Security (DHS), as well as DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

5.      Defendant Commonwealth of Virginia is a state of the United States.

**FEDERAL LAW**

6.      The Constitution empowers Congress to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations, and among the several States" U.S. Const. art. I, § 8, cl. 3.

7.      The Constitution also vests the President of the United States with the "executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

8.      The United States has well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the United States Constitution, numerous acts of Congress, and binding Supreme Court precedent.

9.      Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws.

10.     Executive Order 14218 of February 19, 2025, *Ending Taxpayer Subsidization of Open Borders*, President Trump ordered Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens[.]" In Executive Order 14287 of April 28, 2025, *Protecting American Communities From Criminal Aliens*, President Trump ordered the relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens[.]"

11.     These orders reiterate congressional purposes evidenced in several statutory provisions of the Immigration and Nationality Act (INA) that were added in 1996, to curb incentives for illegal immigration caused by the availability of various public benefits.

12.     Specifically, in 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *See* IRRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009-546 (1996). Some of the objectives of that statute are to promote immigrant self-sufficiency, reduce immigrant reliance on public assistance, and ensure that public benefits are not incentives to enter illegally. *Id*.; *see* 8 U.S.C. § 1601 ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

13.     Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id*. § 1601(2)(A).

14.     Congress emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id*. § 1601(2)(B). Moreover, Congress established that, as a matter of public policy, there "is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

15.     As relevant here, IIRIRA includes a clear "[l]imitation on eligibility for

preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

16.     Section 1623(a) thus does not allow anyone including states to provide illegal aliens with lower in-state tuition rates (also referred to as "resident tuition") based on residence within the state if that same tuition rate is not made available to U.S. citizens without regard to their state residency. 8 U.S.C. § 1623(a).

## THE VIRGINIA LAW

17.     In direct conflict with federal law, Virginia law permits an alien who is not lawfully present in the United States to qualify for reduced in-state rates and state-administered financial assistance based on residence within the state but does not make United States citizens eligible for such benefits without regard to whether the United States citizens are Virginia residents.

18.     Since 2022, Virginia law has allowed unlawful aliens who establish residency in Virginia to benefit from reduced, in-state tuition rates while denying that same benefit to U.S. citizens who are not residents of Virginia.  *See* Va. Code Ann. § 23.1-505.2.

19.     Section 23.1-502 establishes who qualifies for in-state tuition at Virginia public colleges and universities.  The statute provides that a student is eligible for in-state tuition only if the student (or, in certain cases, the student's parent or legal guardian) has established domicile in Virginia by clear and convincing evidence.

20.     Section § 23.1-500 sets forth the governing statutory definitions. It defines "domicile" as an individual's present, fixed home to which the individual returns after temporary absences and intends to remain indefinitely, and defines "domiciliary intent" as presence in the Commonwealth coupled with an intent to remain indefinitely. Va. Code Ann. § 23.1-500.

21.     Accordingly, Virginia law provides that a student qualifies for in-state tuition only upon demonstrating both that the student was domiciled in the Commonwealth for at least one year after forming domiciliary intent and immediately preceding the claimed entitlement, and that the student abandoned any prior domicile, if one existed.  Va. Code Ann. § 23.1-502.

22.     Virginia Code § 23.1-502(B) requires proof that the individual formed a bona fide intent to make Virginia his or her permanent home, as shown by objective, non-educational conduct, and expressly precludes a finding of domiciliary intent where the individual's presence in the Commonwealth is temporary or undertaken primarily for the purpose of attending school.  Va. Code Ann. § 23.1-502(B).

23.     Virginia law expressly provides that a student may not be deemed ineligible to establish domicile for in-state tuition purposes solely on the basis of the immigration status of the student's parent. Va. Code Ann. § 23.1-503(J).  As a result, Virginia law affirmatively removes immigration status as a barrier to establishing domicile and obtaining in-state tuition benefits.

24.     Virginia Code § 23.1-505.1 also creates a statutory pathway to in-state tuition and state financial assistance eligibility.  Specifically, the statute provides that a student qualifies for in-state tuition if the student satisfies three criteria, notwithstanding

6

the domicile requirements of Virginia Code § 23.1-502. First, the student must have attended high school in the Commonwealth for at least two years and either graduated on or after July 1, 2008, from a public or private high school or home-instruction program in Virginia, or passed, on or after that date, a graduation or equivalency examination approved by the Secretary of Education. Va. Code Ann. § 23.1-505.1(A)(1). Second, the student must submit evidence that the student—or if the student is a dependent, at least one parent, guardian, or person standing in *loco parentis*—filed Virginia income tax returns for at least two years preceding the date of registration or enrollment, unless exempted from filing under Virginia law. *Id.* § 23.1-505.1(A)(2). Third, the student must register as an entering student or be currently enrolled in a public or private institution of higher education in the Commonwealth. *Id.* § 23.1-505.1(A)(3).

25.    Although Virginia Code § 23.1-505.1 appears to create a pathway to in-state tuition eligibility separate from traditional domicile requirements, Virginia law makes clear that eligibility based on high school attendance necessarily reflects a prior determination of residency under the Commonwealth's education statutes.

26.    Virginia code § 22.1-5 provides that no person may be charged tuition for admission to Virginia public schools unless the person meets the residency criteria set forth in § 22.1-3. Va. Code Ann. § 22.1-5(A). Section 22.1-3, in turn, limits free public education to children who reside within a school district and defines residency by reference to living with a parent, guardian, or person standing in *loco parentis*, provided that the arrangement is not solely for school purposes. Va. Code Ann. § 22.1-3(A)(1)–(3).

7

27.     As a result, tuition-free attendance at a Virginia public high school is conditioned on meeting Virginia's statutory residency criteria, and public high school attendance therefore reflects compliance with those residency requirements.

28.     This framework carries out the Virginia Constitution's requirement that the Commonwealth provide free public elementary and secondary education to children of school age. Va. Const. art. VIII, § 1. That guarantee applies to resident children, and § 22.1 sets the residency rules that determine who is eligible.

29.     Accordingly, to the extent Virginia law ties in-state tuition eligibility to attendance at Virginia public high schools, the General Assembly relied on an existing residency determination embedded in its K–12 education laws, rather than creating a separate, non-residency-based pathway to subsidized tuition. Statutes that extend in-state tuition eligibility on that basis therefore operate as residency-based provisions, not as independent eligibility schemes.

30.     That residency-based structure, however, directly conflicts with federal law.  By operation of § 23.1-505.1, Virginia permits unlawfully present aliens who satisfy the statute's criteria to receive in-state tuition rates, while denying that same benefit to United States citizens who reside outside the Commonwealth. In doing so, Virginia confers a residence-based tuition benefit on unlawfully present aliens that is not available to United States citizens on equal terms, in contravention of 8 U.S.C. § 1623(a). Because federal law prohibits states from providing such benefits to unlawfully present aliens unless the same benefit is available to U.S. citizens regardless of residency, the challenged provisions, as applied to illegal aliens, are preempted under the Supremacy Clause.

31.    The discrepancy in cost created by this discrimination against U.S. citizens

is substantial.  The cost of tuition for resident students is *significantly* lower than for U.S.

citizens that are not in-state residents.  For example, at the University of Virginia, during

the 2025-2026 school year, undergraduate tuition was $23,897 for Virginia residents, and

$62,923 for out-of-state students.  *See* https://www.usnews.com/best-colleges/uva-

6968/paying#:~:text=University%20of%20Virginia's%20tuition%20is,of%20Virginia%2

0is%20more%20expensive. (last visited December 11, 2025).

32.    The Virginia law as applied to illegal aliens thus grants preferential

treatment to unlawfully present individuals in violation of federal law.

## THE VIRGINIA LAW IS PREEMPTED

33.    The Constitution's Supremacy Clause mandates that "[t]his Constitution,

and the Laws of the United States which shall be made in Pursuance thereof . . . shall be

the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to

the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

34.    Express preemption occurs when Congress, by statute, explicitly

supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy*

*Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203-04 (1983).

35.    Federal statutes may preempt state laws and render them ineffective. They

may do this expressly, by declaring that intent on the face of the statute. *Arizona*, 567

*Arizona v. United States*, 567 U.S. 387, 399 (2012); *Chamber of Com. of U.S. v. Whiting,*

563 U.S. 582, 594 (2011) (When a federal law contains an express preemption clause, we

"focus on the plain wording of the clause, which necessarily contains the best evidence of

Congress' preemptive intent") (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

36.  "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. National Solid Wastes Management Assn.,* 505 U.S. 88, 108 (1992); *see Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (explaining that under the Supremacy Clause, state laws that conflict with federal law are "without effect."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same).

37.  When the statute contains an express preemption clause, the court does not indulge any presumption against pre-emption but instead "focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *N. Virginia Hemp & Agric*., LLC v. Virginia, 125 F.4th 472, 492–93 (4th Cir. 2025).  Further, in determining whether a state law or regulation is preempted, "congressional purpose is 'the ultimate touchstone' …." *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978) ("'The purpose of Congress is the ultimate touchstone'" of pre-emption analysis.") (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

38.  Here, 8 U.S.C. § 1623(a) explicitly prohibits resident tuition benefits for aliens not lawfully present in the United States when United States citizens are ineligible on the basis of residency. The Fifth Circuit has already held as much in *Young Conservatives of Texas Foundation v. Smatresk,* stating that § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th 304, 312-13 (5th Cir. 2023). *See also Equal Access Educ. v. Merten*,

305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating, in the context of reduced in-state

tuition, that under Section 1623(a) "public post-secondary institutions need not admit

illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-

of-state United States citizens receive this benefit").

39.     Section 1623(a) directs that "[n]otwithstanding any other provision of

law," an alien not lawfully present in the United States "shall not be eligible on the basis

of residence within a State ... for any postsecondary education benefit unless a citizen or

national of the United States is eligible for such a benefit ... without regard to whether the

citizen or national is such a resident." 8 U.S.C. § 1623(a).

40.     As evidenced in its title, "Limitation on eligibility for preferential

treatment of aliens not lawfully present on basis of residence for higher education

benefits," Section 1623(a) requires that U.S. citizens be eligible for a benefit without

regard to their residency before any alien not lawfully present in the United States can be

eligible to receive the same benefit (based on residency).

41.     Virginia Code §§ 23.1-502 and 23.1-505.1 conflict with 8 U.S.C. §

1623(a) because they confer in-state tuition benefits on unlawfully present aliens that are

not available to all United States citizens on the same terms, regardless of residency. As a

result, these provisions, as applied to illegal aliens, are preempted under the Supremacy

Clause and are therefore unconstitutional.

42.     States cannot evade express preemption by a *de facto* "residency"

requirement laundered through the State's high school attendance or tax filing

requirements. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024) ("States

cannot do indirectly what federal law forbids them to do directly").

43.    Because Virginia Code § 23.1-505, as applied to illegal aliens, imposes a residency-based eligibility condition unavailable to non-resident U.S. citizens on the basis of residence, it violates § 1623(a)'s explicit prohibition.

## CLAIMS FOR RELIEF

### VIOLATION OF THE SUPREMACY CLAUSE
### (EXPRESS PREEMPTION)

44.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

45.    The challenged provisions of Va. Code Ann. §§ 23.1-502 and 23.1-505.1, as applied to aliens who are not lawfully present in the United Sates, expressly violate federal immigration law's prohibition on providing postsecondary education benefits— such as lower tuition rates-based on residency—to unlawful aliens that are not available to all U.S. Citizens regardless of residency.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.    that this Court enter a judgment declaring that the challenged provisions, as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and are therefore unconstitutional and invalid;

2.    that this Court issue a permanent injunction that prohibits Defendant as well as its successors, agents, and employees, from enforcing the challenged provisions as applied to aliens who are not lawfully present in the United States;

3.    that this Court award the United States its costs and fees in this action; and

4.    that this Court award any other relief it deems just and proper.

DATED: December 29, 2025

STANLEY E. WOODWARD, JR.
Associate Attorney General

ABHISHEK S. KAMBLI
Deputy Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

LINDSEY HALLIGAN
UNITED STATES ATTORNEY AND
SPECIAL ATTORNEY

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

ROBERT K. MCBRIDE
FIRST ASSISTANT
UNITED STATES ATTORNEY

Respectfully submitted,

STEVEN D. SMITH
Trial Attorney

*/s/ Elianis N. Pérez*_____
ELIANIS N. PÉREZ
Assistant Director
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Fax: (202) 305-7000
Telephone: (202) 616-9124
Email: elianis.perez@usdoj.gov

/s/_____
Jonathan H. Hambrick
VSB No. 37590
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone:  (804) 819-5400
Facsimile:  (804) 771-2316
Email:  jay.h.hambrick@usdoj.gov

*Attorneys for the Plaintiff*