UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOHN R. BULL,

    **Plaintiff,**

v.                             2:12cv183

COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff John Bull, proceeding <u>pro</u> <u>se</u>, seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Because the ALJ properly evaluated the evidence bearing on Bull's RFC and his finding that employment was available for Bull is supported by substantial evidence, this report recommends that the Court affirm the final decision of the Commissioner.

## I. PROCEDURAL BACKGROUND

On April 27, 2007, Bull filed an application for DIB,

alleging disability beginning June 1, 2006 due to severe back
pain, bakers cyst behind left knee, attention deficit disorder
("ADD"), and hip pain. (R. 98, 212). The Commissioner denied his
application initially (R. 115-19), and upon reconsideration. (R.
120-23). Bull requested an administrative hearing (R. 124),
which was conducted on May 27, 2009. (R. 64).

Administrative Law Judge ("ALJ") Alfred J. Constanzo
concluded that Bull was not disabled within the meaning of the
Social Security Act, and denied his claim for DIB. (R. 100-10).
Bull sought review by the Appeals Council (R. 141), which
granted review, vacated the ALJ's decision, and remanded the
case to the ALJ for a new decision. (R. 111-14). ALJ Constanzo
conducted another hearing on May 19, 2010 (R. 28), and again
concluded that Bull was not disabled and denied his claim for
DIB. (R. 11-22). The Appeals Council denied review of this
decision (R. 5-7), thereby making the ALJ's decision the final
decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), on
April 13, 2012, Bull filed this action seeking judicial review
of the Commissioner's final decision. (Compl., ECF No. 3). This
case is now before the Court to resolve Bull's motion for
judgment on the pleadings and the Commissioner's counter motion
for summary judgment.

## II.  **FACTUAL BACKGROUND**

Bull was born on July 9, 1954 (R. 161), and attended high school through the eleventh grade as well as one year of community college. (R. 35-36). He is about 6' and weighs 185 pounds. (R. 211). He was previously employed as a marine machinist, general manager of a bar, assistant manager, and sales representative. (R. 38-41, 171-74, 222, 244). He testified he was most recently employed from June 2005 to February 2006 as chief of security for an estate. (R. 36-38). In his application and at the hearing, Bull alleged that he could not work due to a variety of physical and mental ailments including severe back pain (R. 42-44, 212), ADD (R. 46-47, 212), and hip pain. (R. 43-44, 212). Bull also cited a bakers cyst in his application (R. 212), and at the hearing testified that he suffers from post-traumatic stress disorder ("PTSD"). (R. 48-49).

Bull had a psychiatric evaluation with the Virginia Beach Department of Human Services on December 29, 2004. (R. 390-93). Dr. James F. Griswold diagnosed Bull with bipolar disorder, cannabis dependence, personality disorder with paranoid features, and history of back injury. (R. 392-93). Bull continued psychiatric treatment through the Department of Human Services with Dr. James Laster (R. 366-89). In April 2005 Dr. Laster prescribed Adderall for Bull to deal with possible

3

attention deficit hyperactivity disorder ("ADHD"). (R. 389). On June 2, 2006, Bull informed Dr. Laster that he was doing well with the Adderall. (R. 378). Dr. Laster noted that Bull's affect was bright and continued Bull on Adderall. Id. Bull reiterated that the Adderall was "very effective" at a July 28, 2006 appointment. (R. 377). On November 1, 2006, Dr. Laster noted that Bull was "very pleased" with his functioning while on Adderall. (R. 376).

On November 15, 2006, Bull presented to Doctors on Call complaining of back and right elbow pain. (R. 300). He also stated he had hip pain when walking. Id. He was prescribed Vicodin and Robaxin and told to avoid heavy activity. Id. Bull visited Doctors on Call again two weeks later complaining of continued pain. (R. 299). He was prescribed Percocet and given contact information for a pain management specialist. Id. Two weeks later Bull returned complaining of continued back pain but refused treatment and left after hearing he could only receive non-narcotic pain medication. (R. 298). He returned the next day with the same complaints and was again told they could not repeatedly prescribe narcotics to manage chronic pain. (R. 297). They again advised him to contact a pain management specialist. Id.

Bull next visited Dr. Laster on January 10, 2007. (R. 374).

He stated that he had difficulty with pain for five years but that Percocet relieved his pain. Id. He asked Dr. Laster if he could prescribe him some Percocet until he could see a pain management specialist in March. Id. Dr. Laster informed him that he could not and continued to prescribe Adderall. Id.

On March 6, 2007, Antonette Villaflor-Zltouni, PA-C, and Antonio Quidgley-Nevares, M.D., of Eastern Virginia Medical School ("EVMS") evaluated Bull. (R. 407-09). Bull complained of severe back, hip, and knee pain. (R. 407). He denied depression and anxiety but stated that he was drained from the pain. Id. He stated he was independent with his daily living activities, could drive, and could ambulate independently but only for a short distance. (R. 408). He stated that his hip hurt from sleeping on his side and that the pain makes him angry. (R. 407). He acknowledged that heat pads and pain medications help, but stated his pain worsened by walking, twisting, bending, or working. Id. Dr. Quidgley-Nevares diagnosed Bull with chronic pain syndrome, mood disorder, and sleep disorder. (R. 408).

Bull visited Dr. Laster the next day and stated that he was doing okay and felt he was progressively learning things. (R. 373). Dr. Laster continued Bull on Adderall noting that Bull's affect was fairly bright and that he was concentrating well. Id.

On May 13, 2007, Bull visited the emergency department at

Chesapeake General Hospital claiming that his ex-wife's boyfriend threw a phone at him which hit him in the upper lip. (R. 304). Dr. Dominic Johnson noted no lacerations or broken teeth. Id. Bull also claimed that the boyfriend threw a spike and pump which hit him in the left elbow causing pain. Id. There was a red mark and some swelling of the left elbow but Bull was able to fully extend his left arm. Id. Dr. Johnson diagnosed Bull with an acute left elbow contusion. (R. 305). He prescribed Percocet and instructed Bull to rest, ice, and elevate his elbow. Id.

Three days later Bull returned to Dr. Laster and discussed the incident with his ex-wife's boyfriend. (R. 372). He also discussed a prior decision to take pain medications instead of having surgery on his back. Id. Dr. Laster informed him of the potentially addictive nature of pain medications and continued him on Adderall. Id.

Bull visited the emergency room at DePaul Medical Center on three separate occasions during Summer 2007. (R. 308-30). On June 30, 2007, Bull drove himself to the emergency room where he complained of a broken right rib, back pain, and hip pain. (R. 323). An x-ray revealed no fracture and Bull was prescribed Vicodin for the pain. (R. 326, 330). He returned to the emergency room the next week complaining that the Vicodin was

not relieving his pain as well as Percocet. (R. 315). He also stated that he fell the night before which aggravated his rib pain and injured his right elbow. Id. An x-ray of his elbow revealed no fracture. (R. 319). Bull was given a work note stating he was unable to work until July 2, 2007 and prescribed Naprosyn and Percocet. (R. 321). In August Bull entered the emergency room requesting pain medication for back pain caused by a fall a month prior. (R. 308). He stated his pain level was ten and that he had experienced sporadic numbness in his upper left extremity. (R. 308-09). His range of motion was normal and his hand strength was a five out of five. (R. 310). He was instructed that the emergency department was not responsible for pain management and prescribed Vicodin, Naprosyn, and Flexeril. (R. 313).

On August 31, 2007, Bull told Dr. Laster that he was frustrated that he could not get a Percocet prescription for his back. (R. 370). He also indicated that he was able to concentrate and focus. Id. Dr. Laster continued him on Adderall. Id.

In October 2007 Bull told Dr. Laster that he was having financial difficulties. (R. 369). Dr. Laster noted that Bull's affect was not as bright as usual but that Bull was encouraged that his assets were greater than his debts. Id. Bull affirmed

7

that he was taking Adderall regularly and his concentration was good. Id. Bull reiterated his financial difficulties and stated that he was not able to get his October Adderall prescription filled during a December 21, 2007 visit. (R. 367). He also stated that he has more anger when he does not take Adderall. Id.

In January 2008 Bull indicated to Dr. Laster that he was scheduled to be evaluated for disability, but he was surprised a psychiatrist was conducting the evaluation rather than someone who would review his physical ailments. (R. 366.) Dr. Laster noted that Bull's affect was brighter and that he had less anger, which Bull attributed to resuming Adderall. Id.

On January 17, 2008, Jeffrey Morse, M.D., examined Bull and completed a psychology report. (R. 498). Bull complained that he was unable to work due to several physical injuries and needed Adderall and pain medications to function. (R. 498-99). Bull reported that he experiences withdrawal when under stress but has been able to work when properly treated. (R. 499). He stated that his emotional problems were worse due to the nature of the pain and that more pain causes more anger. Id. Bull further reported that he has difficulty focusing and recalled traumatic events from his childhood. (R. 499-500). He stated that his mood was "mediocre." (R. 503).

Dr. Morse found Bull to be fully oriented and his intelligence average or above average, situational judgment intact, and behavior appropriate. (R. 502-03). Bull's thought processes were circumstantial as he gave excessive information and often sidetracked. (R. 503). Dr. Morse diagnosed Bull with ADHD, alcohol dependence in partial remission, pain disorder with psychological and general medical conditions, and mixed personality disorder with anti-social and paranoid traits. (R. 503). Dr. Morse assessed a GAF score of 65. Id. He noted that Bull suffered chronic pain, but cited there was a "high likelihood of some malingering based on his inconsistency in his presentations." (R. 504). Dr. Morse further recorded, "I would not see any difficulty from his mental or emotional condition keeping him from being able to work." Id. He noted that Bull appeared to be more limited by a physical condition and found that under the proper employment circumstances Bull could work full time. Id.

On January 25, 2008, Leopold Moreno, M.D., a physician consultant, reviewed Bull's records and completed a Physical Residual Functional Capacity Assessment. (R. 331-336). Dr. Moreno opined that Bull was not disabled and capable of performing medium work which required him to lift fifty pounds occasionally and twenty-five pounds frequently, and sit and

9

stand and/or walk about six hours each in an eight-hour workday. (R. 332-36). Dr. Moreno found that no postural, manipulative, visual, communicative, or environmental limitations were necessary. (R. 333-34).

On January 29, 2008, Dr. David Deaver completed a Mental Residual Functional Capacity Assessment. (R. 338-41). His assessment, based upon a review of records, noted Bull as moderately limited in his ability to understand and carry out detailed instructions, maintain concentration, work with others, and adapt to changes. (R. 338-39). Dr. Deaver's assessment also concluded that Bull was not significantly limited in his ability to remember work procedures, or to understand and carry out short, simple instructions. (R. 338). He also found no significant limits in Bull's ability to perform activities within a schedule, maintain regular attendance, sustain an ordinary routine without special supervision, and make simple work-related decisions. Id. Dr. Deaver found Dr. Morse's report consistent with Bull's mental abilities. (R. 340-41). Dr. Deaver's summary conclusion was that Bull was "capable of simple, routine work activity." (R. 341). Dr. Deaver's findings were affirmed by Stonsa N. Insinna, Ph.D., a state agency psychological consultant. (R. 357).

During a March 2008 visit Bull told Dr. Laster that he was

having severe financial problems and had been unable to fill his Adderall prescriptions. (R. 491). As a result, Bull was functioning significantly worse and stated that he becomes more angry and impulsive when he does not take Adderall. Id. Two months later Bull informed Dr. Laster that he had been taking Adderall regularly and was functioning much better. (R. 489). He stated, however, that he was having a difficult time with pain and could not find a doctor to prescribe him pain medication. Id. Dr. Laster noted that during the visit Bull discussed material that sounded grandiose and delusional but he denied hearing voices and did not think the material was delusional. Id. At a visit in June, Bull was very verbal and expressed frustration with doctors and dentists. (R. 486). His affect was moderately dysphoric. Id. He stated he does much better when taking a psycho-stimulant, because it makes him much less impulsive. Id.

In May 2008, Richard Surrusco, M.D., a physician consultant, reviewed Bull's file and completed a Physical Residual Functional Capacity Assessment. (R. 358-63). Dr. Surrusco found Bull was capable of medium work with the following limitations: he could lift and/or carry no more than fifty pounds occasionally and twenty-five pounds frequently, sit and stand and/or walk about six hours each in an eight-hour

11

workday with no postural limitations. (R. 359-60). Dr. Surrusco also found that no manipulative, visual, communicative, or environmental limitations were needed. (R. 360-61). Dr. Surrusco found Bull credible to the extent that he has some back tenderness which may affect his walking. (R. 363).

On November 24, 2008, Dr. Laster completed a Mental Capacities Assessment. (R. 480-82). Dr. Laster found Bull was markedly limited in his ability to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; complete a normal workday or week without interruption from psychologically based symptoms; and set realistic goals or plan independently. (R. 481-82). Dr. Laster noted Bull was moderately limited in his ability to: understand and carry out detailed instructions; work with others and without supervision; interact with the general public; and maintain appropriate behavior. (R. 480-82). Bull had no limitations in his ability to understand and carry out short, simple instructions, or to make simple decisions and ask simple questions. (R. 480-81). In February 2009 Dr. Laster noted that Bull's primary impairment was bipolar disorder with a secondary impairment of ADHD. (R. 496). Dr. Laster also wrote that Bull has symptoms of PTSD in a April 19, 2010 letter. (R. 528).

On May 7, 2009, Dr. Singh, Bull's primary treating physician at that time (R. 505-10), completed a form from Bull's insurance provider. (R. 497). He indicated that Bull could perform light work and could sit, stand, and/or walk continuously for one to two hours per day. Id.

At the hearing, Bull testified[1] that he is disabled and unable to work because of back pain (R. 42-44). He also testified that he suffers from ADHD and PTSD. (R. 46-48). He indicated he takes Percocet and Lidocaine for his back pain (R. 48), Adderall for his ADHD (R. 47), and Lipitor and Plavix for his blood pressure. (R. 51). He stated that he walks with a cane (R. 43), and that the longest he can stand and/or walk is fifteen to twenty minutes before sitting for no more than twenty to twenty-five minutes. (R. 45). He also stated he has difficulty bending and stooping but can lift a gallon of milk. (R. 45-46). He currently lives alone on a boat where he independently cooks and cleans. (R. 53-54).

In addition to Bull's testimony, the ALJ heard from Barbara Byers, a vocational expert ("VE"). The VE testified based upon limitations framed by the ALJ that Bull could work as an agricultural produce sorter, housekeeping cleaner, or poultry

---

[1] Bull was assisted at the hearing by a non-attorney representative from Legal Aid.

trimmer. (R. 59-60). She testified that there were approximately 900 positions locally and 250,000 available nationally for the occupation of agricultural produce sorter, 23,000 positions locally and 870,000 nationally for housekeeping cleaner, and 5,000 positions locally and 160,000 nationally for poultry trimmer. (R. 60). She further stated that a sit-stand requirement would eliminate the housekeeping cleaner and poultry trimmer occupations but not the agricultural produce sorter. Id. She also noted that a limitation in which Bull was not able to maintain regular attendance and complete tasks due to psychiatrically based symptoms would eliminate all jobs. Id.

### III. <u>STANDARD OF REVIEW</u>

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. of N.Y. v. NLRB</u>, 305 U.S.

197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).


## IV.  ANALYSIS

To qualify for disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements

of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful
> activity by reason of any medically
> determinable physical or mental impairment
> which can be expected to result in death or
> which has lasted or can be expected to last
> for a continuous period of not less than 12
> months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1.  Is the individual involved in substantial gainful activity?

2.  Does the individual suffer from a severe impairment or combination of impairments which significantly limit

his or her physical or mental ability to do work activities?

3.   Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4.   Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5.   Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. § 404.1520. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears

17

the ultimate responsibility for weighing the evidence. <u>Hays</u>, 907
F.2d at 1456.

**A. The ALJ's Decision**

In this case, the ALJ's second opinion, affirmed by the
Appeals Council, made the following findings under the five part
analysis: (1) the ALJ found that Bull did not engage in
substantial gainful employment from June 1, 2006 (his alleged
onset date) through June 30, 2008 (date last insured); (2) Bull
had severe impairments of bipolar disorder, PTSD, history of
polysubstance abuse, and low back pain; (3) his combination of
impairments did not meet one of the listed impairments in
Appendix 1; (4) Bull had the residual functional capacity
("RFC") to perform light work, with specified restrictions that
the work require only simple, routine and repetitive tasks, with
minimal interaction with the public and co-workers. Finally,
although the ALJ concluded that Bull could not perform his past
relevant work, he did identify jobs which exist in substantial
numbers in the national economy which Bull could perform. (R.
16-22).

In his motion for judgment on the pleadings, Bull primarily
argues that the ALJ erred in determining his RFC. Specifically,
he alleges that ALJ failed to properly evaluate and weigh the
medical evidence, including the reports of his treating

physicians Drs. Laster and Singh. He also argues that the ALJ did not properly evaluate his claims of pain. Finally, he claims that the ALJ's finding that that a significant number of jobs exist in the national economy which he could perform is not supported by substantial evidence.

**B. The ALJ Properly Evaluated the Evidence Bearing on Bull's RFC**

While Bull does not directly address the ALJ's RFC finding, he effectively contends that the ALJ erred in determining his RFC, which is defined as the plaintiff's maximum ability to work despite his impairments. 20 C.F.R. § 404.1545(a)(1); see SSR 96-9P, 1996 WL 374185, at *2 (S.S.A. July 2, 1996) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). When a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must then determine the plaintiff's RFC. 20 C.F.R. § 404.1520(e). After doing so, the ALJ uses that RFC at step four of the sequential analysis to determine whether the plaintiff can perform his past relevant work. Id. § 404.1545(a)(5)(i). If it is determined that the plaintiff cannot perform past relevant work, the ALJ uses the RFC at step five to determine if the plaintiff can make an

adjustment to any other work that exists in the national economy. Id. § 404.1545(a)(5)(iii).

At the administrative hearing level, the ALJ alone has the responsibility of determining RFC. Id. § 1546(c). RFC is determined by considering all the relevant medical and other evidence[2] in the record. Id. §§ 404.1545(a)(3) and 404.1527(b). Relevant evidence includes "information about the individual's symptoms and any 'medical source statements'-i.e., opinions about what the individual can still do despite his or her impairment(s)-submitted by an individual's treating source or other acceptable medical sources." SSR 96-8P, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). In this case, the ALJ found that Bull had the RFC to perform a reduced range of light work.

## 1. The ALJ properly explained the weight assigned to medical opinions

Bull contends that the ALJ did not properly evaluate the medical evidence and erred by giving improper weight to the opinions of Drs. Singh and Laster. (ECF No. 10 at 3, 5). Bull also argues that the ALJ's evaluation of Dr. Singh's and Dr. Laster's reports is not credible, because it conflicts with his

---

[2] "Other evidence" includes statements or reports from the claimant, the claimant's treating and nontreating source, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529(a).

findings in the July 15, 2009 decision, (R. 100-10), which was later vacated by the Appeals Council. (ECF No. 10 at 3, 5). The Appeals Council vacated the ALJ's July 15, 2009 decision and remanded the case to the ALJ with specific instructions to reevaluate Bull's RFC with specific citations to evidence in the record. (R. 114). The ALJ conducted a new hearing, reconsidered the evidence, and issued a new decision. See 20 C.F.R. § 404.977(b) ("The [ALJ] shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."); Houston v. Sullivan, 895 F.2d 1012, 1015-16 (5th Cir. 1989) (holding that the ALJ was free to reevaluate the claimant's work capacity on remand, because it was not inconsistent with the Appeals Council's remand order). The Appeals Council refused to review this decision, thereby making it the final decision of the Commissioner. Accordingly, this Court may only consider the evaluations of the ALJ in his second decision issued July 22, 2010. See 42 U.S.C. § 405(g).

As stated above, the ALJ alone has the responsibility for determining RFC. In doing so, the ALJ must consider the objective medical evidence in the record, including the medical opinions of the treating physicians and the non-examining medical consultants. In assigning weight to any medical opinion,

21

the ALJ must consider the following factors: (1) "[l]ength of treatment relationship"; (2) "[n]ature and extent of treatment relationship"; (3) degree of "supporting explanations for their opinions"; (4) consistency with the record; and (5) the specialization of the physician. 20 C.F.R. § 404.1527.

Generally, the opinion of a treating physician is given more weight than that of a non-treating or non-examining medical source. Id. § 404.1527(d)(1)-(2). A treating physician's opinion merits "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." Id. § 404.1527(d)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

Because the regulations require the ALJ to evaluate every medical opinion, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in [the regulations]." SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996). When the ALJ determines that the treating physician's opinion should not be given

22

controlling weight, the ALJ must articulate "good reasons" for his decision. Id. at § 404.1527(d)(2). When the evidence is such that reasonable minds could differ as to whether a claimant is disabled, the ALJ, and ultimately the Commissioner, must resolve any inconsistencies in the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

Here, the ALJ properly evaluated the opinions of the medical providers and non-examining consultants and provided detailed reasons for his assessment. The undersigned finds no error in that assessment.

In his decision, the ALJ found, after "careful consideration of the entire record," that Bull was capable of performing reduced light work, as defined by 20 C.F.R. 404.1567(b), which required only "simple, routine and repetitive tasks." (R. 19). In making the RFC determination, the ALJ provided a review of Bull's treatment record including the records of Drs. Singh and Laster. (R. 19-21). The ALJ gave considerable weight to Dr. Singh's May 7, 2009 opinion. Dr. Singh found that Bull could perform light work and could continually sit, stand and/or walk for one to two hours a day. The ALJ noted that Dr. Singh was a treating source and found that despite these limitations Bull could work at a job that offered usual morning, afternoon, and lunch breaks. Id. at 20.

The ALJ's decision to accord considerable weight to Dr. Singh's opinion was proper. Dr. Singh was a treating source and his findings are not inconsistent with other evidence in the record. Both DDS medical consultants found Bull capable of performing medium work which required him to lift fifty pounds occasionally, twenty-five pounds frequently, and sit, stand and/or walk about six hours in an eight-hour workday. The ALJ found Bull to be <u>more limited</u> than these opinions and accorded them moderate weight. Thus, the ALJ appropriately gave Dr. Singh's opinion more weight as a treating source. His RFC findings limited Bull more than the DDS consultants'. He did not err in giving Dr. Singh's May 7, 2009 opinion considerable weight.

Because Dr. Laster was a treating source, the ALJ "gave considerable accommodation" to his opinion on Bull's mental health limitations. <u>Id.</u> The ALJ noted Dr. Laster found that Bull had difficulty with social functioning, concentration, and persistence and pace. The ALJ did not, however, accord significant weight to all of Dr. Laster's findings, because the ALJ found that Dr. Laster's treatment records did not support the most serious limitations. The ALJ noted that Dr. Laster's records indicated that Adderall was effective in treating Bull's ADHD. He also gave little weight to Dr. Laster's April 2010

statement that Bull suffered from PTSD. The ALJ noted that the progress notes showed no occurrences of nightmares or flashbacks and Bull had no sleep or appetite problems.

Having reviewed the ALJ's decision and the aforementioned reasons articulated in that decision, the undersigned finds that the ALJ supplied "good reasons" for not giving "controlling weight" to Dr. Laster's statements concerning Bull's mental health limitations. Bull stated to Dr. Laster and Dr. Laster noted on several occasions, that his concentration and focus improved greatly when he took Adderall.[3] Also, like Dr. Laster, Dr. Morse diagnosed Bull with ADHD and mixed personality disorder, citing that Bull recounted traumatic childhood events. Dr. Morse, however, assessed a GAF score of 65 and found no mental or emotional condition which limited Bull from working. Rather, he found that Bull could work under appropriate circumstances. Dr. Morse's less severe findings also appear to be in line with Dr. Laster's finding that Bull could understand and carry out short, simple instructions and make simple decisions, which were both incorporated in the ALJ's RFC

---

[3] Bull argues in his Reply that the ALJ incorrectly stated that he consistently refused to take any medication other than Adderall for his mental impairments. (ECF No. 15 at 1; R. 20). The Respondent conceded this point and acknowledged that the Commissioner incorrectly stated that Bull "refused" any other medication. (ECF No. 16 at 1). While the ALJ's statement is not supported by the record, there is nonetheless substantial evidence to support the ALJ's decision not to give Dr. Laster's opinion controlling weight.

determination. Nonetheless, to the extent they conflict, the law provides that "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or on the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. Moreover, Bull articulated to both Drs. Laster and Morse that his physical impairments were more disabling than his mental impairments. Accordingly, the ALJ did not err by refusing to give Dr. Laster's opinion concerning his mental limitations controlling weight. Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991).

## 2. The ALJ correctly evaluated Plaintiff's complaints of pain

Bull next argues that the ALJ erred in finding his subjective complaints of pain not credible. (See ECF No. 10 at 4-8). At step four of the analysis, the ALJ determined that though "[Bull's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; . . . [Bull's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 20).

In deciding whether a plaintiff is disabled, the ALJ must consider all symptoms, including pain, and the extent to which

26

such symptoms can reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 404.1529(a). A plaintiff's subjective statements about pain or other symptoms alone are not enough to establish disability. Id. Under both federal regulations and Fourth Circuit precedent, determining whether a person is disabled by pain or other symptoms is a two-step process. First, the plaintiff must satisfy a threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. Id. § 404.1529(b); Craig, 76 F.3d at 594-95. "However, while a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'" Craig, 76 F.3d at 592-93 (quoting Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986)).

After the plaintiff has satisfied the first step, the ALJ must evaluate the intensity and persistence of the plaintiff's symptoms and the extent to which they affect his ability to work. 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ must consider "all the available evidence," including: (1) the plaintiff's history, including his own statements, id.; (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical

27

and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," id. § 404.1529(c)(2); and (3) other evidence submitted by the plaintiff relevant to the severity of the impairment such as evidence of daily activities, medical treatments and medications, and descriptions of the pain or other symptoms, id. § 404.1529(c)(3). In evaluating the intensity and persistence of the plaintiff's symptoms and the extent to which they affect her ability to work, the ALJ must consider whether inconsistencies exist and the extent to which there is conflict between the plaintiff's statements and the other evidence. Id. § 404.1529(c)(4). According to the regulations, a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id.

Here, the ALJ followed this two-step inquiry. He first found that Bull's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 20). In other words, Bull satisfied his threshold obligation.

Although Bull satisfied this threshold burden, the ALJ found that Bull's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" inasmuch as they are inconsistent with the record. (R. 20). In so finding, the ALJ considered the entire record and documented his review in detail in the opinion. He observed that Dr. Singh noted that Bull could still perform light work despite his back pain and could continually sit, stand and/or walk for one to two hours a day. (R. 20). The Court finds that the ALJ complied with both the regulations and Fourth Circuit precedent in evaluating Bull's pain, and supported his decision with substantial evidence.

To the extent Bull contends that the ALJ erred in evaluating his credibility, the Court must give great deference to the ALJ's credibility determinations. Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). "When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstance.'" Id. (quoting NRLB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). The Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NRLB

v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)). The undersigned finds no exceptional circumstance present, nor error in the ALJ's findings with respect to Bull's credibility.

## C. The ALJ's finding of available employment was supported by substantial evidence

At stage five in the evaluation, the ALJ found that there were jobs which exist in significant numbers in the national economy which Bull could perform. In doing so, the ALJ relied upon testimony from the VE, who identified three positions which Bull could perform: agricultural produce sorter with 900 locally available positions and 250,000 positions available nationally; housekeeper cleaner with 23,000 locally available positions and 870,000 positions available nationally; and poultry trimmer with 5,000 locally available positions, and 200,000 positions available nationally.

Bull's motion for judgment on the pleadings argues that the VE testified that Bull could not perform any of these jobs due to his limitations. He also argues that the ALJ never presented a hypothetical to the VE. Bull is mistaken.

The ALJ plainly presented a hypothetical to the VE:

> Consider the Claimant's age, he was 51 at the alleged
> onset date, so he was closely approaching advanced age
> at all times during this relevant period, which is
> June of '06 to the date last insured on June of '08.
> Consider the education 11 years of high school and the
> one year of courses that he described and of course
> consider the work that you classified. Assume that he
> would be limited to no more than light work, but
> further limited by simple, routine, repetitive tasks,
> minimal, if any contact with the public and coworkers,
> which would also preclude any type of team work with
> coworkers on the job. Let me stop there, with that
> profile, would there be other work?

(R. 59). Though the ALJ may not have used the term

"hypothetical" as he did on page 60 of the record, it is plain

that this was the hypothetical posed to the VE. The VE

determined that under this hypothetical an individual could

perform the occupations of agricultural produce sorter,

housekeeping cleaner, and poultry trimmer. The ALJ then asked

the VE whether adding a sit/stand option to the hypothetical

would affect a person's ability to perform any of these jobs. In

response to only this question, the VE testified that a sit-

stand option would eliminate the housekeeping cleaner and

poultry trimmer occupations. The ALJ next adjusted the

hypothetical to determine whether a person who could not

maintain regular attendance and could not persist at tasks due

to psychiatrically based symptoms would be able to perform these

three jobs. The VE replied that such limitations would eliminate

all jobs.

31

Although framed in the second and third hypothetical, the ALJ did not incorporate a sit-stand option nor any limitations on regular attendance or completion of tasks into Bull's RFC. The initial hypothetical presented by the ALJ is the same as his RFC determination. Therefore, the ALJ's finding that Bull had available employment was supported by substantial evidence, namely, the VE's testimony. Bull's argument that the hypothetical did not include all of his limitations is refuted by the analysis set forth above concerning the ALJ's determination of his RFC.

## V.  <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned recommends that the Court GRANT the Commissioner's motion for summary judgment, DENY the Plaintiff's motion for judgment on the pleadings, and affirm the final decision of the Commissioner.

## VI.  <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of

mailing of this Report to the objecting party, 28 U.S.C. §
636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal
Rules of Civil Procedure. A party may respond to another party's
objections within fourteen (14) days after being served with a
copy thereof.

2. A district judge shall make a de novo determination of
those portions of this report or specified findings or
recommendations to which objection is made.

The parties are further notified that failure to file
timely objections to the findings and recommendations set forth
above will result in waiver of right to appeal from a judgment
of this Court based on such findings and recommendations.
Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433
(4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th
Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 2, 2013

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

> John R. Bull
> 9229 Inlet Rd.
> Norfolk, VA 23503
>
> John R. Bull
> P.O. Box 65502
> Virginia Beach, VA 23467
>
> Virginia Lynn Van Valkenburg
> United States Attorney Office
> 101 W Main St
> Suite 8000
> Norfolk, VA 23510

Fernando Galindo, Clerk

By    _____
      Deputy Clerk

_____, 2013